IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LILITH P.,[1]

Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.

_____

Case No. 6:20-cv-01869-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

Plaintiff Lilith P. seeks judicial review of the final decision of the Commissioner of Social

Security ("Commissioner") denying plaintiff's application for child's Social Security disability

insurance benefits ("CDB") and Supplemental Security Income ("SSI") disability benefits

_____

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the
non-governmental party in this case. Where applicable, this opinion uses the same designation
for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

pursuant to 42 U.S.C. §§ 416 and 423. All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). The Commissioner's decision is remanded for further proceedings.

## PROCEDURAL BACKGROUND

On August 15, 2018, plaintiff[2] applied for CDB and Title XVI SSI disability benefits. Tr. 157-62, 163-66. These claims were denied initially and upon reconsideration. Tr. 103-07, 112-114. On January 23, 2020, a hearing was held before an Administrative Law Judge ("ALJ"), where the plaintiff was represented by a non-attorney representative. Tr. 15. Both plaintiff and a vocational expert ("VE") testified at the hearing. Tr. 29-46. Plaintiff alleged disability beginning June 30, 2016.[3] Tr. 32, 157. On February 20, 2020, the ALJ issued a decision finding plaintiff not disabled under sections 223(d) and 1614(a)(3)(A) of the Social Security Act. Tr. 12-24.

Plaintiff timely requested Appeals Counsel review of the ALJ's decision, but the Appeals counsel denied review on September 2, 2020. Tr. 1-6. On October 30, 2020, plaintiff filed a complaint in this Court. Pl's Compl. at pp. 1-3 (doc. 1).

## FACTUAL BACKGROUND

Born July 15, 1994, plaintiff was 21 years old on the alleged date of disability and 25 years old at the time of the hearing. Tr. 33, 157. Plaintiff has completed the eleventh grade but does not have a GED. Tr. 33. Plaintiff has never applied for or held a job. Tr. 34, 196. Plaintiff alleges disability beginning June 30, 2016, due to persistent depressive disorder, post-traumatic stress

---

[2] Plaintiff prefers the pronouns: "they/them." Pl. Br. at p. 2 (doc. 12).
[3] Plaintiff initially alleged disability beginning June 30, 2012, but, at the hearing, they amended their alleged onset date to June 30, 2016. Pursuant to section 202(d) of the Social Security Act, a claimant must have a disability before the age of 22 to claim child's insurance benefits. Tr. 16. Plaintiff's amended alleged disability date occurs before they turned 22. Tr. 32, 157.

disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), bipolar, agoraphobia, and generalized anxiety disorder. Tr. 18, 20, 32, 48, 76.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

Under sections 206(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, the plaintiff must establish disability on or before the date last insured to be entitled to a period of disability and disability insurance benefits.

The initial burden of proof rests upon the plaintiff to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Additional considerations apply to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim on which there has been a final decision by an ALJ or the Appeals Council that the plaintiff is not disabled. *See* SSR

Page 3 – OPINION & ORDER

97-4(9); *see also* <u>Chavez v. Bowen</u>, 844 F.2d 691 (9th Cir. 1988). When adjudicating the subsequent claim involving an unadjudicated period, adjudicators will apply a presumption of continuing non-disability and determine that the plaintiff is not disabled with respect to that period, unless the plaintiff rebuts the presumption. <u>Id.</u> A plaintiff may rebut the presumption by showing a "changed" circumstance affecting the issue of disability with respect to the unadjudicated period, e.g., a change in the plaintiff's age category under 20 C.F.R. §§ 404.1563 or 416.963, an increase in the severity of the plaintiff's impairment(s), the alleged existence of an impairment(s) not previously considered, or a change in the criteria for determining disability. <u>Id.</u>

If the plaintiff rebuts the presumption, adjudicators then must give effect to certain findings, as explained below, contained in the final decision by an ALJ or Appeals Council on the prior claim, when adjudicating the subsequent claim.

The Commissioner has established a five-step sequential process for determining whether a person is disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner considers whether a plaintiff is engaged in "substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the plaintiff is not disabled.

At step two, the Commissioner evaluates whether the plaintiff has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. § 404.1520(c). If the plaintiff does not have such an impairment, then plaintiff is not disabled.

At step three, the Commissioner determines whether the plaintiff's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the plaintiff is presumptively disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner resolves whether the plaintiff can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the plaintiff can perform past work, then plaintiff is not disabled; if the plaintiff cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must establish that the plaintiff can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the plaintiff is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17.

At step two, the ALJ determined the following impairments were severe: "persistent depressive disorder with intermittent major depressive episodes; agoraphobia; posttraumatic stress disorder (PTSD); attention deficit/hyperactivity disorder (ADHD); bipolar disorder; and generalized anxiety disorder." Tr. 18. The ALJ also found that several of plaintiff's impairments were not related to functional limits: "hypothyroidism, juvenile idiopathic scoliosis, gastroesophageal reflux disease, vitamin D and iron deficiencies, tachycardia, tinnitus, acne, and drug related hair loss." Id.

At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Id.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected their ability to work. The ALJ determined that

Page 5 – OPINION & ORDER

plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional limits as defined in 20 C.F.R. §§ 404.1567(b) and 416.929 except:

> The claimant can understand, remember and carry out simple, routine, and repetitive instructions that can be learned in 30 days or less. The claimant is limited to isolated work, which involves no public contact and occasional direct coworker and supervisor interaction, with no group tasks. Supervisor contact should generally be limited to providing work assignments and answering questions, then leaving the individual to complete tasks independently. The claimant should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties, occasional simple, work-related decision-making and no work on a moving conveyor belt. The claimant should have no exposure to moving mechanical parts and high, unprotected place hazards, as rated by the Dictionary of Occupational Titles (DOT). The claimant cannot travel outside the workplace as part of the job.

Tr. 19.

At step four, the ALJ determined plaintiff has no past relevant work. Tr. 23.

At step five, the ALJ determined that considering the plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy the plaintiff can perform. Id. Accordingly, the ALJ concluded plaintiff was not disabled from June 30, 2016, through the date of the decision, February 20, 2020. Tr. 24.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting treating therapist Licensed Professional Counselor (LPC) Susan Nierman's opinion; (2) improperly rejecting plaintiff's testimony; (3) improperly addressing the testimony of lay witness Dawna P., plaintiff's mother; and (4) making a five-step finding that is not supported by substantial evidence. Pl.'s Br. at 8-17 (doc. 12).

## I.    The ALJ Reasonably Considered LPC Nierman's Medical Opinion

On January 1, 2020, LPC Nierman completed a statement about plaintiff's impairments. Tr. 766-69. She opined that plaintiff exhibited "persistent depressive disorder with intermittent major depressive episodes, agoraphobia, posttraumatic stress disorder, and other specific attention-deficit/hyperactivity disorder." Tr. 766. She identified that plaintiff has received various treatments including cognitive and dialectical behavioral therapies, eye movement desensitization and reprocessing, and psychotropic medication management. Id. She also stated that plaintiff's hypothyroidism might contribute to their mental impairment. Id. She had no evidence that plaintiff has ever abused alcohol or street drugs. Tr. 767.

LPC Nierman analyzed plaintiff's expected performance in a variety of categories if plaintiff were to work 40 hours per week on a regular and sustained basis. LPC Nierman ranked plaintiff's limitations in each category as either "extreme," "marked," "moderate," "mild," or "none." Tr. 767. LPC Nierman assessed plaintiff's ability to travel to unfamiliar places or use public transportation as "extreme"—defined as "the ability to function is precluded." Tr. 769. She rated plaintiff's ability to remember and carry out detailed instructions; maintain attention and concentration for extended periods; work in proximity of others without being distracted; respond appropriately to changes at work; ask simple questions or for assistance; and to complete a normal workday and workweek at a consistent pace without interruptions as "marked"—defined as "the ability to function in this area is seriously limited." Tr. 767-69. She assessed most other categories as "moderate"—defined as "the ability to function in this area is less than marked but more than mild"—including plaintiff's ability to tolerate normal levels of stress and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Id. LPC Nierman assessed several categories as "mild"—defined as "there are limitations on ability to

function in this area, but they are mild or transient"—such as plaintiff's ability to carry out short and simple instructions, sustain an ordinary routine without special supervision, and maintain socially appropriate behavior. Id.

LPC Nierman opined that plaintiff's impairments would substantially interfere with their ability to work on a regular and sustained basis at least 20% of the time. Tr. 769. LPC Nierman did not estimate how many days per month plaintiff would miss due to their mental impairments; LPC Nierman stated that missed days would be difficult to predict because she thought "it would be a challenge for [plaintiff] to obtain employment, let alone attend work on a regular basis." Id.

When analyzing treating therapist LPC Nierman's medical opinion evidence, this Court will apply the new regulatory framework promulgated in 2017 by the Social Security Administration. These new rules substantially change how ALJs evaluate medical opinion evidence on DIB and SSI applications filed on or after March 27, 2017, including plaintiff's application that was filed in August 2018. 20 C.F.R. §§ 404.1520c, 416.920c. Under these new rules, no medical opinion is inherently entitled to special deference based on the relationship with a claimant. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

When considering medical opinions, the ALJ will consider which medical opinion(s) is most persuasive, emphasizing the two primary considerations: (1) supportability by relevant objective medical evidence; and (2) consistency with other medical opinions (and prior administrative findings) of record. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2), Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). Other, less important factors include "relationship with the claimant," "specialization," "frequency of examinations," and "other factors." 20 C.F.R. §§ 404.1520c(c), 416.910c(c). Under the new regulations, the medical professional's relationship with claimant is a

Page 8 – OPINION & ORDER

consideration but is less important, and accordingly, the Commissioner is no longer required to "supply evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Allen O. v. Comm'r of Soc. Sec., 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020). Instead, the Commissioner must consider every medical opinion in the record and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The new regulations also change how the Commissioner must articulate how medical opinions were considered. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

> First, we will articulate our consideration of medical opinions from all medical sources regardless of whether the medical source is an AMS. Second, we will always discuss the factors of supportability and consistency because those are the most important factors. Generally, we are not required to articulate how we considered the other factors set forth in our rules. However, when we find that two or more medical opinions or prior administrative medical findings about the same issue are equally well-supported and consistent with the record but are not exactly the same, we will articulate how we considered the other most persuasive factors. Third, we added guidance about when articulating our consideration of the other factors is required or discretionary. Fourth, we will discuss how persuasive we find a medical opinion instead of giving a specific weight to it. Finally, we will discuss how we consider all of a medical source's medical opinions together instead of individually.

Allen O., 2020 WL 6505308, at *5 (quoting Regarding the Evaluation of Medical Evidence (Revisions to Rules), 82 Fed. Reg. 5844 (Jan. 18, 2017).

Plaintiff contends the ALJ improperly rejected the opinion of treating therapist, LPC Nierman, because the ALJ concluded that LPC Nierman's findings were inconsistent with each other and insufficiently supported. Pl's Br. at 8-11 (doc. 12).

The ALJ cited three reasons for rejecting LPC Nierman's opinion: (1) Some of the limits are excessive and not consistent with other limits in LPC Nierman's opinion; (2) LPC Nierman provides minimal or no explanation for her specific ratings and limits; and (3) The record is consistent with state agency non-examining psychological consultants' conclusion that the

claimant could "complete basic and detailed tasks at a steady pace during workdays and workweeks with intermittent need to coordinate with others." Tr. 22.

The Ninth Circuit held that "if a treating examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Treviso v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). The ALJ provided "specific and legitimate" reasons to reject LPS Nierman's contradicted medical opinions, and therefore, the case is not remanded on these grounds.[4]

### A.    The ALJ Reasonably Rejected LPC Nierman's Opinions About Plaintiff's Socialization Skills Because the Opinions Were Excessive and Inconsistent

The ALJ properly found that some of LPC Nierman's limits were excessive and not consistent with other limits in her same opinion. When "evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ highlighted that LPC Nierman assessed a "marked" limitation for working near/in coordination with others, but only a "mild" limit with coworker interaction and "moderate" limit relating to the public. Tr. 767-69. Although the plaintiff contends that these limitations are inherently different, the ALJ was reasonable in interpreting that they are interrelated and inconsistent. Interacting with coworkers, relating to the public, and working near or in

---

[4] Defendant contends that the new regulations supersede this prior Ninth Circuit case law that requires an ALJ to provide "clear and convincing" reasons to reject uncontradicted medical opinions and "specific and legitimate" reasons to reject contradicted medical opinions. The Ninth Circuit has not yet ruled whether the new regulations repeal previous Ninth Circuit case law. However, that is unnecessary to decide for purposes of this case because the ALJ provides at least "specific and legitimate" reasons to reject LPC Nierman's contradicted medical opinions, and therefore the ALJ's reasoning would meet any lower standard potentially promulgated by the new regulations.

coordination with others all entail similar social skillsets. While it is logical that a plaintiff could have more severe limitation working with the public than coworkers, it seems inconsistent that plaintiff could have a "marked" limitation working near others but merely a "mild" limitation regarding other coworkers. It would be logical to conclude that a "marked" limitation in only one of these similar categories is excessive and not in line with other opinions.

The ALJ reasonably found LPC Nierman's limits regarding plaintiff's socialization skills unpersuasive because of these inconsistencies. Although these limits may be subject to more than one logical interpretation, the ALJ's reasonable conclusion must be upheld. Therefore, the case is not remanded to reexamine this issue.

**B.    The ALJ Reasonably Rejected Some of LPC Nierman's Opinions That Are Not Adequately Supported by the Record**

The ALJ found insufficient support in the record to support LPC Nierman's opinions expressed in the questionnaire. "While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017), 'the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.'" Ford v. Saul, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)). Additionally, supportability is one of the two most important factors for examining medical opinion advice pursuant to the new 2017 regulations. 20 C.F.R. §§404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). LPC Nierman's opinions were not adequately supported.

LPC Nierman did not identify specific support for her questionnaire answers. When the questionnaire asked LPC Nierman to explain why she believed plaintiff could not work on a regular and sustained basis considering their mental impairments, LPC Nierman stated, "mental

impairment related to depression, agoraphobia, trauma and inattention," which does not adequately explain some of LPC Nierman's opinions. Tr. 769. LPC Nierman did not point to any specific evidence to explain her answers. Plaintiff contends that this questionnaire was not offered in a vacuum and that LPC Nierman also submitted extensive treatment records. Pl. Br. at p. 10 (doc. 12). However, the treatment records do not automatically offer explanation for LPC Nierman's limits; in fact, the treatment records sometimes contradicted LPC Nierman's contentions. For example, LPC Nierman opined a "marked" limitation in plaintiff's ability to "understand and remember detailed instructions" but the treatment records routinely cite plaintiff's average intelligence and memory within normal limits; simply saying "inattention" does not adequately explain this limit. Tr. 315, 376, 519-20, 769. In sum, LPC Nierman does not explain the bases of her conclusions, nor can this Court locate adequate support in the record for LPC Nierman's questionnaire.

The ALJ met the specific and legitimate standard when rejecting some of LPC Nierman's conclusions that were not explained nor supported by the record. Therefore, the ALJ properly rejected some of LPC Nierman's opinions, and the case is not remanded to reexamine this issue.

### C.    The ALJ Reasonably Rejected LPC Nierman's Opinion that Plaintiff Cannot Work an Appropriate Amount Because Two Medical Professionals Contradicted This Opinion

The ALJ appropriately rejected LPC Nierman's opinion that plaintiff could not work on a regular and sustained basis because this opinion was contradicted by two nonexamining State agency psychological consultants. Tr. 22-23, 54-56, 66-68, 83-85, 96-96. Pursuant to the 2017 regulations, which eliminated the hierarchical system of categorizing medical opinion advice, the opinion of LPC Nierman is not afforded automatic deference due to her relationship with plaintiff. Instead, the medical opinions of LPC Nierman and the two psychological consultants must be

Page 12 – OPINION & ORDER

examined based on the two most important regulatory factors: supportability and consistency. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Additionally, "the contrary opinions of examining or nonexamining physicians constitutes specific and legitimate reasons for discounting the opinions of treating physicians." Allen O., 2020 WL 6505308 at *6 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The two State consultants, Arthur Lewy, Ph.D., and Winifred C. Ju, Ph.D., reviewed plaintiff's medical records in October 2018 and February 2019 respectively and indicated that claimant could "complete basic and detailed tasks at a steady pace during workdays and workweeks with intermittent need to coordinate with others." Tr. 22-23, 54-56, 66-68, 83-85, 96-96. This conclusion contradicted LPC Nierman's conclusion that plaintiff's impairments would interfere with their ability to work on a regular and sustained basis at least 20% of the time.

The ALJ looked for supportability and consistency in both the medical opinions and incorporated aspects of all three medical professionals' opinions. The ALJ accepted and incorporated many limits that LPC Nierman recommended that were supported by and consistent with the record; the ALJ found LPC Nierman's recommendations persuasive "as to limits involving simple work, the need for social limits, and low stress work." Tr. 22. However, the ALJ also accepted Dr. Lewy and Dr. Ju's contention that plaintiff could work at simple tasks steadily throughout the workday; the ALJ opined that this conclusion is generally consistent with the record insofar as that work is simple, routine, repetitive, independent, and low stress with limited public contact. Tr. 22-23. The contradicting opinions of Dr. Lewy and Dr. Ju regarding plaintiff's ability to work, provide a specific and legitimate reason to reject LPC Nierman's opinion that plaintiff cannot work.

Therefore, the ALJ properly rejected LPC Nierman's opinion that plaintiff cannot work in a sustained and regular manner, and the case is not remanded on these grounds.

## II.    The ALJ Reasonably Considered Portions of Plaintiff's Testimony and Unreasonably Failed to Consider One Portion of Plaintiff's Testimony

At the January 2020 hearing, plaintiff indicated their primary symptoms that prevented them from working include fatigue, panic attacks, anxiety, and paranoia. Tr. 34-37. They also indicated that they experience about four bad days (in which they cannot get out of bed) per month, but this is an improvement from their previous state of approximately four bad days per week. Tr. 38-39. They attributed this improvement to a change in medication to Lexapro. Tr. 39. They also credited the new medication with a decrease in thoughts of self-harm and acts of cutting. Tr. 39-40.

Plaintiff testified that they cannot stand for the duration of a shower due to fatigue, and they cannot drive or use public transportation because it will induce a panic attack. Tr. 34. They declared they can walk to therapy appointments, but only because their therapist and providers can calm them down once they arrive. Tr. 34-35. They attested that they could visit the grocery store at times, but have a hard time completing tasks such as checking the mail due to paranoia. Tr. 35-36. They currently live with their mom and younger brother. Tr. 33.

Plaintiff attested that they have never held nor applied for a job. Tr. 34. Additionally, they stated they exclusively socialize online and are in an online-based romantic relationship of 10 years. Tr. 37-38. They also reference poor self-worth and stated it effects their ability to do things. Tr. 39. They attested to occasional panic attacks, induced by situations like checking the mail. Tr. 41.

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a

> two-step analysis. First, the ALJ must determine whether there is
> "'objective medical evidence of an underlying impairment which
> could reasonably be expected to produce the pain or other symptoms
> alleged.'" If the claimant has presented such evidence, and there is
> no evidence of malingering, then the ALJ must give "'specific, clear
> and convincing reasons' " in order to reject the claimant's testimony
> about the severity of the symptoms.

Molina, 674 F.3d at 1112-13 (internal citations omitted).

Before rejecting a claimant's testimony, the ALJ must consider if that testimony is consistent with the record. See 20 C.F.R. § 416.926(c). When an ALJ relies on examples to demonstrate why a plaintiff's testimony is not credible, the ALJ should not single out "a few periods of temporary well-being from a sustained period of impairment," but rather should choose data points that "*in fact* constitute examples of a broader development." Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. 2014) (emphasis in original). In formulating the RFC, the ALJ also must not "examin[e] an individual's character" propensity for truthfulness. SSR 16-3p, 2016 WL 1119029, at *1. Instead, the ALJ may use "ordinary techniques of credibility evaluation." Molina, 674 F.3d at 1112-13. "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; [including] unexplained or inadequately explained failure to seek treatment." Id.

If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). But if claimant's testimony and claims of disability are not consistent with the record, the ALJ must provide "clear and convincing reasons" for discrediting such testimony. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014). Here, the ALJ provided clear and convincing reasons to reject portions of plaintiff's testimony but did not provide an adequate explanation to reject other key assertions.

Plaintiff argues that the ALJ wrongfully rejected their testimony because the ALJ did not cite a clear and convincing reason to do so. Pl.'s Br. at p. 12 (doc. 12). The ALJ determined that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record; therefore, some of plaintiff's statements were disregarded. Tr. 20. This is valid for some of plaintiff's statements but not for others.

### A.   The ALJ Reasonably Rejected Portions of Plaintiff's Testimony Because They Were Inconsistent with and Unsupported by the Record

The ALJ validly rejected plaintiff's testimony about socialization and therapy appointment behavior due to inconsistencies with the record and lack of support. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). Evidence in the record did not support plaintiff's contention that they needed help being calmed down at therapy appointments nor that they exclusively socialize online. The ALJ did not find any record of plaintiff needing assistance being calmed down at appointments, and instead found numerous records of plaintiff presenting neatly, appropriately, and engaged. Tr. 21. Likewise, the ALJ did not find evidence that plaintiff exclusively socialized online and instead found that the record showed numerous in-person social visits. Tr. 21. Thus, the ALJ reasonably found plaintiff's claims about socialization and therapy appointment behavior inconsistent and unsupported by the record.

Plaintiff counters that the ALJ singled out a few periods of temporary well-being to base these conclusions on, however this contention is unfounded. There are various instances throughout the record that indicate appropriate therapy appointment behavior and in-person social

visits. Nothing in the record indicates that these examples were uncharacteristic or attributable to temporary well-being.

Regarding therapy appointment behavior, there are numerous reports throughout the record of plaintiff arriving at therapy appointments by themselves with a "pleasant and engaged" affect and an "alert and oriented" manner. Tr. 299; *see also* 303, 304, 314, 319-20, 645, 738, 756-59. The record indicates that plaintiff occasionally displayed anxious behavior such as needing a ride from her mother or giggling when not appropriate, however, these did not impede plaintiff's general appropriate affect and behavior at these appointments. Tr. 277, 323. For example, treatment notes from one session noted that plaintiff's "affect [was] somewhat withdrawn and I get the feeling a little resistant, but she [was] engaged." Tr. 283. This inconsistency appears throughout the record, demonstrating that the ALJ did not unreasonably single out a few periods of well-being regarding therapy appointment behavior.

The record also demonstrates that the ALJ did not unreasonably single out temporary periods of well-being when examining plaintiff's social activities. The record reports several examples of in-person activities including a visit from plaintiff's best friend over the Thanksgiving holiday, and other visits with friends in which plaintiff reported "working on crafts, playing video games, and watching reality TV" with their friend. They also reported they had been "sleeping well and enjoying their time" during this visit. Tr. 644, 718, 719. Although in-person social visits are not an everyday occurrence for plaintiff, plaintiff does appear capable of experiencing and even enjoying certain in-person social interactions. Tr. 644, 718, 719, 730, 738. Nothing in the record indicated that these visits occurred during a temporary uncharacteristic period of exceptional well-being, thus ALJ did not unreasonably single out these examples.

Page 17 – OPINION & ORDER

Therefore, the ALJ properly rejected plaintiff's testimony about therapy appointment behavior and socialization, and the case is not remanded on these grounds.

### B.    The ALJ Reasonably Discounted Portions of Plaintiff's Testimony Because Plaintiff Can Perform Certain Daily Activities Consistent with the Ability to Work

The ALJ reasonably discounted the plaintiff's contention that they cannot work because the plaintiff engages in "daily activities inconsistent with the alleged symptoms," which is grounds for discrediting a plaintiff's testimony. <u>Molina</u>, 674 F.3d at 1112-13. Further, the ALJ reasonably interprets plaintiff's daily activities. Even where plaintiff's subjective testimony about their own daily activities is subject to more than one interpretation, the ALJ's interpretation is entitled to deference if it is reasonable. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

Regarding plaintiff's daily activities, the ALJ reasonably noted that plaintiff can perform daily activities consistent with low stress employment based on the following evidence from the record: the plaintiff regularly exercises, walks to appointments, does arts and crafts with her mother, and has shown improvement regarding their depression and anxiety by using various "coping" mechanisms. Tr. 21. The ALJ also recognized the following limitations on daily activities: difficulty leaving the house, paranoia when checking the mail, sleep disturbance, and variable levels of intrusive thoughts and energy. Tr. 21. Considering the ALJ's assessment of daily activities and limitations, the ALJ found that plaintiff could perform work but included the following workplace limitations in the RFC determination:

> The claimant is limited to isolated work, which involves no public contact and occasional direct coworker and supervisor interaction, with no group tasks. Supervisor contact should generally be limited to providing work assignments and answering questions, then leaving the individual to complete tasks independently. The claimant should perform only low stress work, which is defined as requiring only occasional changes in work setting, occasional changes in work duties,

occasional simple, work-related decision-making and no work on a moving conveyor belt.

Tr. 19.

Plaintiff has no previous work history, nor has plaintiff applied for any jobs, so the application of plaintiff's daily activities and limitations to a work setting is subject to multiple interpretations. Tr. 34, 196. Where the ALJ provides a reasonable interpretation, this Court will defer. Rollins, 261 F.3d at 857. The ALJ noted that plaintiff could leave the house and attend scheduled appointments and run errands with her mother, consistent with scheduled, low-stress work. The ALJ also recommended the type of work that involves minimal public or coworker interaction, minimal decision making, and does not involve tasks like checking the mail. Tr. 19, 21.

Therefore, the ALJ reasonably interpreted plaintiff's abilities to perform daily activities and reasonably rejected plaintiff's testimony that they cannot work; the case is not remanded on these grounds.

## C.    The ALJ Unreasonably Failed to Consider Whether Plaintiff Can Sustain a Job

Plaintiff contends that the ALJ did not properly address whether the plaintiff could sustain a job. Pl. Br. at p. 13 (doc. 12). At the hearing, plaintiff testified that they had approximately four "bad days" each month—days in which they could not get out of bed or meet basic needs. Tr. 38. According to the VE, a worker who is off task more than 10 percent of the time or absent more than one day per month would be terminated and unable to sustain competitive employment. Tr. 44-45. Spending four days per month in bed is a reported improvement for plaintiff, but it is not clear whether this limitation is consistent with plaintiff's ability to sustain competitive employment. *See* Tr. 38-39.

Page 19 – OPINION & ORDER

The ALJ broadly stated that plaintiff's "statements about the intensity, persistence, and limiting effects of their symptoms are inconsistent within the bounds of the restrictive residual functional capacity." Tr. 21. Where the ALJ provides a reasonable interpretation, this Court will defer. <u>Rollins</u>, 261 F.3d at 857. However, an interpretation cannot be reasonable if it does not address a portion of plaintiff's testimony. In making the determination, the ALJ did not consider plaintiff's alleged inability to get out of bed four times per month and whether this would infringe on plaintiff's ability to sustain competitive employment that allows no more than one absence per month. Nor does the ALJ provide a reason for dismissing this portion of plaintiff's testimony. Thus, the ALJ did not provide a clear and convincing reason for rejecting this portion of plaintiff's testimony and further proceedings are necessary to consider whether plaintiff can work in a sustained and regular manner despite their alleged four "bad days" per month.

As such, further proceedings are required to resolve this case. <u>See</u> <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1105 (9th Cir. 2014) (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Upon remand, the ALJ must reevaluate the evidence of record regarding plaintiff's ability to sustain regular employment.

### III.    The ALJ Reasonably Considered the Lay Witness Testimony

Plaintiff's mother, Dawna P., provided a written questionnaire that described the plaintiff's impairments on October 11, 2018. Tr. 208. Dawna P. observed symptoms of extreme anxiety; she described that plaintiff develops hives and rashes and becomes physically ill when out in public for too long. <u>Id</u>. Indeed, she offered the example of shopping trips: if the plaintiff goes to the store, they can end up in bed for one or two days. <u>Id</u>. She further stated that plaintiff becomes disorganized with external stimuli and describes that plaintiff's conditions have become more

Page 20 – OPINION & ORDER

severe overtime. Tr. 208-12. She reported that plaintiff has recently engaged in fewer social activities, does less art, is more resistant to doing household tasks like laundry and cleaning, and has a harder time feeding herself. Tr. 210-12. According to Dawna P., in a typical day plaintiff feeds cats, makes protein shakes, and sits or lays in their room with or without their phone. Tr. 209. They need alarms to take medicine and complete daily personal care tasks. Id. Plaintiff's mother described that plaintiff's medications are still being adjusted. Tr. 214.

Plaintiff contends the ALJ erred in rejecting the lay witness testimony of Dawna P. Pl. Br. at pp. 13-14 (doc. 12). The ALJ must consider lay testimony as to the severity of a plaintiff's symptoms. Nguyen v. Charter, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may only discount lay witness testimony by providing "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The reasons must be specific to each witness. Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009). One germane reason to reject lay witness testimony is if it is substantially similar to plaintiff's validly discredited allegations. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

Regarding this testimony, the ALJ opined that it is "generally consistent with the claimant's but adds little of evidentiary value." Tr. 20. Where an ALJ gives germane reasons for rejecting the plaintiff's testimony, those reasons are equally germane to similar testimony by a lay witness. Valentine, 574 F.3d at 694. Plaintiff contends that that Dawna P.'s testimony was more detailed than the plaintiff's own testimony describing fatigue and the effects of their anxiety. Pl. Br. at. p. 15. Dawna P. described plaintiff's conditions in a similar manner as plaintiff—difficulty leaving the home, few social interactions, tiredness. The ALJ validly rejected portions of plaintiff's testimony that mirrored these assertions. Although Dawna P. provides some details that plaintiff does not, Dawna P.'s overall conclusions are substantially similar plaintiff's discredited assertions.

Further, the ALJ's RFC determination incorporated certain limits that are supported by both plaintiff's and Dawna P.'s testimony. For example, Dawna P. testifies that plaintiff will become ill if they go out in public—accordingly, the ALJ has recommended work with no public interaction. Tr. 23. The ALJ was reasonable in dismissing the lay witness's testimony because it was substantially similar to plaintiff's validly rejected testimony.

Therefore, the ALJ provided a germane reason for rejecting Dawna P.'s testimony. The ALJ's decision stands regarding this portion of lay witness testimony.

## IV.    The ALJ Cannot Fully Consider Plaintiff's RFC Assessment Until All of Plaintiff's Testimony is Reasonably Considered

Because the ALJ has not adequately addressed the reasons for rejecting portions of plaintiff's testimony, it is unclear whether the RFC assessment adequately accounted for plaintiff's physical and mental limitations. A remand for further proceedings is appropriate for the ALJ to adequately consider plaintiff's testimony regarding spending four "bad days" per month in bed. Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014). Therefore, the ALJ cannot fully consider plaintiff's RFC determination until plaintiff's testimony is reconsidered. The ALJ should reexamine plaintiff's RFC determination after reconsidering plaintiff's testimony.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is REVERSED, and the case REMANDED for further proceedings. Upon remand, the Commissioner should reassess the

plaintiff's subjective complaints and the plaintiff's residual functional capacity as appropriate.

IT IS SO ORDERED.

DATED this 8ᵗʰ day of October, 2021.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge